# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MORRIS J. PEAVEY,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES, *et al.*<br><br>    Defendant. | **Civil No. 12-691 (CKK)** |

## MEMORANDUM OPINION
(August 26, 2015)

Plaintiff Morris J. Peavey, proceeding *pro se*, filed suit against the United States and five federal officials, asserting a variety of claims relating to Plaintiff's military service dating back to the 1960s, as well as his discharge from the military and his efforts to obtain benefits and correct his military records in the years following his discharge. The current action is the latest in a series of cases filed by Plaintiff relating to similar issues. *E.g.*, *Peavey v. United States*, No. 11-937 (D.D.C. Filed May 19, 2011); *Peavey v. Gonzales*, No. 05-819 (D.D.C. Filed April 25, 2005). Defendants have filed a Motion to Dismiss Plaintiff's Complaint arguing that Plaintiff's claims are either barred by *res judicata* and collateral estoppel, time-barred by statutes of limitations, or have not been administratively exhausted.  Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that all of Plaintiff's claims must be dismissed because they are barred by *res judicata*, collateral estoppel, or a statute of limitations,

---

[1] Defendants' Motion to Dismiss ("Defs.' Mot."), ECF No. [19]; Plaintiff's Counter Motion for Summary Judgment in Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. [24]; Defendants' Reply in Support of Defendants' Motion to Dismiss and Opposition to Plaintiff's Counter Motion for Summary Judgment ("Defs.' Reply"), ECF No. [26].

because they have not been administratively exhausted, or because Plaintiff has failed to sufficiently plead his allegations pursuant to Federal Rule of Civil Procedure 8.  Accordingly, the Court shall GRANT Defendants' Motion to Dismiss.[2]

## I.     BACKGROUND

Plaintiff's 65-page, single-spaced Complaint is far from a model of clarity.  Nevertheless, the Court has been able to discern the following factual allegations from the Complaint and will accept these allegations as true for the purposes of this Motion to Dismiss.  *See Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) ("On review of a motion to dismiss, we treat the complaint's factual allegations as true and must grant [plaintiff] the benefit of all inferences that can be derived from the facts alleged." (quotation marks and alteration omitted)).  According to his Complaint, while enlisted in the Army, Plaintiff was injured when he was struck as a pedestrian by an automobile in September 1966.  Compl., ECF No. [1], at 12.[3]  Plaintiff suffered from various health issues thereafter.  *Id.* at 13-14.  Plaintiff alleges that his injuries were not correctly diagnosed by the Army and, as a result, he was forced to go "AWOL seeking proper medical care."  *Id.* at 13.  Despite being allegedly "unfit for military service," Plaintiff was denied his request for a Medical Evaluation Board ("MEB") and was not released from service.  *Id.*  While in the Army, Plaintiff also alleges that he was "physically assaulted by a squad of Caucasian

---

[2] In response to Defendants' Motion to Dismiss, Plaintiff filed a document entitled "Counter Motion for Summary Judgment in Opposition to Defendants' Motion to Dismiss."  *See* ECF No. [24]. It is unclear to the Court whether Plaintiff intended this document to be a cross-motion for summary judgment or simply an opposition to Defendants' Motion to Dismiss.  Plaintiff did not comply with any of the rules governing the submission of a motion for summary judgment. *See* Local Civil Rule 7(h).  In any event, because the Court grants Defendants' Motion to Dismiss, Plaintiff's cross-motion for summary judgment, if appropriately treated as such, is moot.

[3] Due to inconsistencies in Plaintiff's pagination of his Complaint, all page cites from Plaintiff's Complaint are to the ECF page numbers.

soldiers" and, after the attack, falsely imprisoned. *Id.* at 14, 37. Plaintiff alleges he was improperly

court-martialed, demoted, and issued a Certificate of Unsuitability for Enlistment/Reenlistment.

*Id.* at 15, 37. Plaintiff was honorably discharged from the Army on August 5, 1967. *Id.* at 8, 21.

Subsequently, Plaintiff alleges, the Army and the Department of Veterans Affairs ("VA")

"altered, substituted, or destroyed" and "obstruct[ed] access" to his U.S. Army Health Records and

personnel files. *Id.* at 12, 38. In addition, the VA sent Plaintiff a "notice of death" and improperly

"discontinued his disability benefits." *Id.* at 50. After his discharge, Plaintiff petitioned the Army

Board for Correction of Military Records ("ABCMR") on May 9, 1968, to correct his military

records. *Id.* at 11. Specifically, Plaintiff sought to have removed from his records a court-martial

conviction, negative conduct efficiency reports, and a disciplinary action. Defs.' Ex., ECF No.

[19-2], at E1.[4] The ABCMR denied Plaintiff's 1968 petition because there was "insufficient

evidence . . . to indicate probable material error or injustice." *Id.* at E2; Compl. at 4.

Several decades later, Plaintiff filed FOIA requests with the VA and the National Personnel

Records Center ("NPRC") seeking military medical records. *See* Compl. at 5; *Peavey I*, at 188-

90. Plaintiff was provided many of his requested documents. *See Peavey I*, at 188-90. On May

18, 2006, Plaintiff again petitioned the ABCMR for correction of his military records. Compl. at

52. Plaintiff's petition was closed without action because his "military records . . . could not be

---

[4] Plaintiff does not attach to his Complaint his 1968 or 2006 ABCMR petitions, the ABCMR's response to those petitions, nor the ABCMR's decision in response to Plaintiff's 2010 application. However, the Court finds that these documents have been incorporated into Plaintiff's Complaint by reference. *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F.Supp.2d 117, 119 (D.D.C. 2011) (quoting *Gustave–Schmidt v. Chao*, 226 F.Supp.2d 191, 196 (D.D.C. 2002)) (explaining that a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint"). As Defendants attach the 1968 and 2006 petitions and corresponding ABCMR decisions, as well as the ABCMR's decision in response to Plaintiff's 2010 application, to their Motion to Dismiss, the Court will cite to Defendants' exhibits.

found" and, therefore, there was "not sufficient [evidence] for a thorough review of [his] case." Defs.' Ex. at E5; Compl. at 53.  Plaintiff subsequently submitted several additional applications to the ABCMR requesting the same relief, as well as Freedom of Information Act ("FOIA") requests. However, the ABCMR indicated that it had searched for Plaintiff's military records, but had not been able to locate them and thus did not have sufficient information to review Plaintiff's case. Compl. at 5, 53.  In 2010, Plaintiff petitioned the ABCMR yet again seeking removal of the court-martial and other disciplinary actions, removal of a Certificate of Unsuitability for Enlistment/Reenlistment, restoration of his rank, and a medical discharge.  *Id.* at 21 (Nov. 3, 2010, ABCMR Application), 42, 55.  Plaintiff apparently provided several documents to the ABCMR, *see* Defs.' Ex. at E23 (2011 ABCMR Decision), but alleges that medical records he provided were refused by the ABCMR because they were not authenticated, Compl. at 23.  The Board conducted a review of Plaintiff's application and rendered a decision in November 2011.  Although the ABCMR found Plaintiff's 2010 petition to be untimely pursuant to 10 U.S.C. § 1552(b), the ABCMR "elected to conduct a substantive review of [Plaintiff's petition] and, only to the extent relief, if any, is granted, [] determined it [was] in the interest of justice to excuse the applicant's failure to timely file."  Defs.' Ex. at E23 (2011 ABCMR Decision); Compl. Ex., ECF No. [1-1], at 34 (Nov. 2, 2011, ABCMR Denial Letter).  Ultimately, the ABCMR found that "[t]he evidence presented [did] not demonstrate the existence of a probable error or injustice" and, thus, there was an "insufficient" "basis for correction of the records."  Defs.' Ex. at E37 (2011 ABCMR Decision).

Plaintiff filed the present lawsuit on April 30, 2012, naming as Defendants the United States, Attorney General Eric Holder, Army Secretary John McHugh, Veterans Affairs Secretary Eric Shinseki, National Archives and Records Administration Archivist Adrienne Thomas, and

4

FOIA Officer Jennifer Kaldor ("Officer Kaldor").[5]   Plaintiff's causes of action assert that Defendants denied Plaintiff proper medical care and committed medical malpractice, assault and battery, and false imprisonment; obstructed Plaintiff's access to his U.S. Army Health Records under FOIA and suppressed, altered, and attempted to destroy those records; failed to correct his military records (with respect to the 2011 ABCMR decision); deprived Plaintiff of medical benefits; sent false notices of Plaintiff's death to his family; and violated various constitutional rights. *See* Compl. at 3, 5, 8-11, 46, 50.

Plaintiff has filed three prior lawsuits involving the same nucleus of defendants, facts, and causes of action.  The first case, filed in 2005 in this District and decided by Judge Richard Roberts in 2009, dismissed Plaintiff's complaint for lack of jurisdiction and for failure to state a claim, and entered summary judgment in favor of Defendants on Plaintiff's FOIA claims.  *See Peavey v. Holder*, 657 F.Supp.2d 180 (D.D.C. 2009) (*Peavey I*).  Plaintiff appealed and the United States Court of Appeals for the District of Columbia Circuit summarily affirmed the District Court, holding that "[t]he merits of the parties' positions are so clear as to warrant summary action." *Peavey v. Holder*, No. 09-5389, 2010 WL 3155823, at *1 (Aug. 9, 2010).  The second case, filed in the Middle District of Florida and decided in 2011, was dismissed for failure to submit pleadings with the minimal standard of clarity after Plaintiff was given two opportunities to amend the complaint.  *See Peavey v. Black*, No 8:09-cv-1975, 2011 WL 2457901 (M.D. FL 2011) (*Peavey II*).  The third lawsuit was filed in this District in 2011 and decided by Judge James E. Boasberg. *See Peavey v. United States*, 846 F.Supp.2d 10 (D.D.C. 2012) (*Peavey III*).  The complaint before Judge Boasberg was substantially similar to Plaintiff's Complaint presently before the Court—

---

[5] Loretta Lynch, Robert McDonald, and David S. Ferriero are substituted for Eric Holder, Eric Shinseki, and Adrienne Thomas under Federal Rule of Civil Procedure 25(d).

indeed, entire sections of Plaintiff's present Complaint have been copied word-for-word from Plaintiff's complaint in *Peavey III*. *See Peavey III*, Compl., ECF No. [1].   Judge Boasberg dismissed all of Plaintiff's claims in 2012 finding that most of the claims were based on facts and causes of actions that had been litigated and finally determined in the prior two actions and were thus barred by claim and issue preclusion.  *Id.* at 12.   As to Plaintiff's remaining claims, Judge Boasberg found that Plaintiff had either failed to exhaust the administrative remedies as to those claims or they were moot.  *Id.* at 17-18.  Plaintiff appealed and his appeal was dismissed as untimely.  *See Peavey v. United States*, No. 12-5163 (Dec. 4, 2012).

In response to Plaintiff's present Complaint filed before this Court, Defendants have moved the Court to dismiss the Complaint on the basis that it "makes largely the same claims against the same parties" at issue in *Peavey III* and, thus, is likewise barred by the doctrines of *res judicata* and collateral estoppel.  Defs.' Mot., at 4.  Defendants also argue that Plaintiff has failed to exhaust his administrative remedies regarding his FTCA claim against Officer Kaldor and that the statute of limitations bars judicial review of the 2011 ABCMR ruling against Plaintiff.  Plaintiff has filed an opposition to Defendants' Motion to Dismiss and Defendants have filed a reply.  Accordingly, Defendants' Motion is ripe for the Court's review.

## II.      LEGAL STANDARD

### A.  Lack of Subject Matter Jurisdiction (12(b)(1))

A court must dismiss a case when it lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  To survive a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA,* 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced

in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta,* 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted). "At the motion to dismiss stage, counseled complaints, as well as *pro se* complaints, are to be construed with sufficient liberality to afford all possible inferences favorable to the pleader on allegations of fact." *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss pursuant to Rule 12(b)(1)," the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.,* 503 F.Supp.2d 163, 170 (D.D.C. 2007) (citations omitted).

### B. Failure to State a Claim (12(b)(6))

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "*Res judicata* may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim when the defense appears on the face of the complaint and any materials of which the court may take judicial notice." *Sheppard v. District of Columbia,* 791 F.Supp.2d 1, 5 n. 3 (D.D.C. 2011). "The court may take judicial notice of public records from other court proceedings." *Lewis v. Drug Enforcement Admin.,* 777 F.Supp.2d 151, 159 (D.D.C. 2011) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.,* 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

When evaluating a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton,* 567 F.3d at 681. Additionally, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," *Ward,* 768 F.Supp.2d at 119 (quoting

7

*Gustave–Schmidt v. Chao*, 226 F.Supp.2d at 196), or " 'documents upon which the plaintiff's complaint necessarily relies' even if the document is produced not by [the parties]," *id.* (quoting *Hinton v. Corr. Corp. of Am.*, 624 F.Supp.2d 45, 46 (D.D.C. 2009)). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

"Pleadings must be construed so as to do justice," Fed. R. Civ. P. 8(e), and documents filed by *pro se* parties must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks omitted). Nonetheless, "[a] *pro se* complaint, like any other, must present a claim upon which relief can be granted." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981). The district court "need not accept inferences unsupported by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations." *Kaemmerling v. Lappin*, 553 F.3d 669, 677 (D.C. Cir. 2008) (internal quotation marks omitted).

### III.    DISCUSSION

#### A.    Res Judicata and Collateral Estoppel

Defendants move to dismiss Plaintiff's claims on the basis that they have already been finally decided and, thus, are barred under the doctrines of *res judicata* and collateral estoppel. Plaintiff disputes this argument, particularly as it pertains to his FTCA claim against Officer Kaldor and his claim for review of the 2011 ABCMR decision. The Court agrees with Plaintiff that those two claims are not precluded by *res judicata* or collateral estoppel; however, the Court

finds that Plaintiff's remaining claims must be dismissed pursuant to these preclusion doctrines.

Under the doctrine of *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Sheppard,* 791 F.Supp.2d at 4 (quoting *Drake v. FAA,* 291 F.3d 59, 66 (D.C. Cir. 2002)). "A judgment on the merits is one that 'reaches and determines the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form.' " *Id.* at 7 (quoting *Saylor v. Lindsley,* 391 F.2d 965, 968 (2d Cir. 1968) (internal citations omitted)) (citing *Nwachukwu v. Karl,* 222 F.R.D. 208, 212 (D.D.C. 2004) (noting the judicial goal of "deciding cases on their merits, as opposed to procedural mishaps dictating the outcome")). A decision on a motion to dismiss under Rule "12(b)(6) presents a ruling on the merits with *res judicata* effect." *Haase v. Sessions,* 835 F.2d 902, 906 (D.C. Cir. 1987). "Whether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.' " *Drake,* 291 F.3d at 66 (quoting *Page v. United States,* 729 F.2d 818, 820 (D.C. Cir. 1984)). To determine whether two cases share the same nucleus of facts, courts consider "whether the facts are related in time, space, origin, or motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Stanton v. D.C. Court of Appeals,* 127 F.3d 72, 78 (D.C. Cir. 1997) (quotation omitted). In short, in deciding whether *res judicata* applies, the Court must consider "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *NRDC v. EPA*, 513 F.3d 257, 260 (D.C. Cir. 2008) (quoting *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006)).

The majority of the claims presently before this Court were already brought against the

same defendants and finally adjudicated in Peavey's 2005 case before Judge Roberts (*Peavey I*). Plaintiff's 2005 suit named four of the six Defendants named here: the Attorney General, the Army Secretary, the Veterans Affairs Secretary, and the National Archives and Records Administration Archivist. *See Peavey I*, at 182. As here, Plaintiff claimed in that lawsuit destruction and suppression of his army records; denial of access to his records in violation of FOIA; the torts of false imprisonment, assault, and battery; improper medical treatment; improper retention in the U.S. military; an unlawful taking and discontinuation of his medical benefits; an improper death notice; failure of the ABCMR to correct his records; and Constitutional violations under the Fifth and Ninth Amendments. *Peavey I*, Compl. ¶¶ 38, 44, 60, 63, 69, 73, 98. On September 28, 2009, Judge Roberts issued a detailed opinion dismissing each of Plaintiff's causes of action except for Plaintiff's FOIA claim on which he entered summary judgment in favor of Defendants. As Judge Boasberg aptly explained when invoking *res judicata* to dismiss Plaintiff's complaint in *Peavey III*:

> Despite characterizing "[p]ortions of Peavey's allegations . . . [as] difficult to understand and . . . not clear enough to be illuminating," *id.* at 182, [Judge Roberts] went to great lengths to carefully discuss each of his causes of action. For example, the court separately analyzed and rejected Peavey's challenge to 38 U.S.C. § 511, which limits judicial review of the VA's benefits decisions, *id.* at 185–86; his claim that the VA's benefits decisions were improper, *id.* at 186–87; his FOIA claims for the release of medical and military records, *id.* at 187–90; his allegation that different agencies concealed, altered, and destroyed government records and impeded his ability to obtain benefits and correct his military records, *id.* at 190–91; . . . his constitutional and common law torts, including those brought under the Federal Tort Claims Act, *id.* at 191–92; his claims under civil rights statutes, *id.* at 192; . . . and his claim for review of the ABCMR's decision not to correct his military records. *Id.* at 193.

*Peavey III*, at 14. On August 9, 2010, the D.C. Circuit summarily affirmed Judge Roberts' decision, holding that the "merits of the parties' positions are so clear as to warrant summary action." *See Peavey*, 2010 WL 3155823, at *1. Accordingly, each of the elements of *res judicata*—

the same claims, the same parties, and a valid, final judgment[6]—are present here.  That Plaintiff's

"arguments may differ somewhat from those presented previously does not allow him a second

bite at the apple.  Claim preclusion 'bars relitigation not only of matters determined in a previous

litigation but also ones that a party *could have raised*.' " *Peavey III*, at 15 (quoting *NRDC V.*

*Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988)) (emphasis in *Peavey III*).  Accordingly, the Court

finds that, to the extent the present lawsuit involves the same parties as *Peavey I*, the majority of

Plaintiff's claims are barred by the doctrine of *res judicata*.[7]

---

[6] In the middle of Plaintiff's Complaint, Plaintiff has placed a letter dated May 31, 2011, from the Department of the Army.  *See* Compl. at 24.  The letter states that it is a "notice" constituting "final action" on Plaintiff's FTCA claim against the United States in relevant part for the "alleged medical[] malpractice [Plaintiff] received at Womack Medical Center, Fort Bragg, North Carolina, until [Plaintiff] was discharged from the Army on August 5, 1967. *Id.* In the section of Plaintiff's Complaint entitled "Exhausting Administrative Remedy," *id.* at 4-5, Plaintiff makes passing reference to this letter without explaining its import in a paragraph that is otherwise focused on exhaustion of Plaintiff's ABCMR claims, *id.* at 4.  The Court will liberally construe Plaintiff's Complaint as providing this letter as proof that Plaintiff has cured his failure to exhaust his FTCA claims—the basis on which Judge Roberts originally dismissed Plaintiff's FTCA claims. *See Peavey I*, at 192. However, the May 31, 2011, letter clearly states that pursuant to the FTCA, Plaintiff was "required to file [his] claim not later than two years from date of accrual" and, thus, the agency has "no jurisdiction to investigate the merits of [Plaintiff's] allegations of medical malpractice" since the injuries Plaintiff alleges "took place in the early 1970s." Compl. at 24. In short, the letter reflects that Plaintiff did not timely exhaust his administrative remedies and cure this deficiency.  *See Reynolds v. U.S. Capitol Police Bd.*, 357 F.Supp.2d 2, 10-11 (D.D.C. 2004) (explaining, in relation to a prior case that determined that plaintiff failed to exhaust a claim, that "a claim of jurisdiction will not be precluded if subsequent to the initial dismissal there are developments tending to cure the identified jurisdictional deficiency" (citation omitted)). Accordingly, Judge Roberts' finding that "[Plaintiff] has not alleged or provided any evidence within his voluminous filings showing that he properly exhausted his administrative remedies with respect to any potential FTCA claim against any of the defendant agencies" still precludes Plaintiff's FTCA claims.  *Peavey I*, at 192.

[7] The Court notes that *Peavey II*, the lawsuit that Plaintiff filed in the Middle District of Florida in September 2009, naming a number of Dade City, Florida officials, as well as Treasury Secretary Timothy Geithner, also alleged that the VA improperly destroyed Plaintiff's original records, sent his family a false death notice, and discontinued his benefits, among other claims not alleged here.

To the extent Plaintiff names parties not named as defendants in his prior cases—notably, the United States[8]—issue preclusion, also known as collateral estoppel, bars Plaintiff's claims that were previously decided. Under the doctrine of collateral estoppel, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Sheppard*, 791 F.Supp.2d at 5 (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). Issue preclusion applies if three conditions are met: "First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in the first [case]. Third, preclusion in the second [case] must not work an unfairness." *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983) (internal citations and quotation marks omitted). Issue preclusion can work an unfairness where "the party to be bound lacked an incentive to litigate" in the first action the issue to be precluded in the second. *Id.* Unlike claim preclusion, "issue preclusion does not require mutuality of parties." *Gov't of Rwanda v. Johnson*, 409 F.3d 368, 374 (D.C. Cir. 2005) (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971)).

All issues raised here against the United States have been previously litigated in a court of competent jurisdiction, submitted for judicial determination, and dismissed. To the extent "a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or

---

[8] The Court addresses the claims against Officer Kaldor, who is also a new party, separately.

otherwise urged." *Yamaha Corp.*, 961 F.2d at 257-58 (quotation omitted).  Just as Judge Boasberg

declared in *Peavey III* when reviewing a complaint substantially similar to the Complaint presently

before this Court, the Court cannot conceive of any unfairness that would work against Plaintiff

by precluding these claims against the United States.   There is no evidence that the prior

proceedings were "seriously defective," *Blonder–Tongue Labs.*, 402 U.S. at 333, or that Plaintiff

now has a significant incentive to litigate certain claims which he lacked in the first case, *Yamaha*

*Corp.*, 961 F.2d at 254.   Moreover, Defendants are not using collateral estoppel "offensively"—a

strategy that has caused concern for many courts—instead, they are using it "defensively."   *See*

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-32 (1979)) (unfairness concern heightened when

plaintiff seeks to use collateral estoppel "offensively" against defendant when plaintiff was not

party to prior suit).   Accordingly, the Court finds that collateral estoppel bars Plaintiff's claims

against the United States.

Out of an abundance of caution, the Court will separately address Plaintiff's claim that the

VA refused to authenticate Plaintiff's medical records as required for ABCMR review.   *See*

Compl. at 11.   Although Plaintiff's allegations are far from clear, Plaintiff appears to allege that

the VA's refusal to authenticate his records arose after the VA released records in 2006 in response

to Plaintiff's FOIA request and, thus, after the period covered by Plaintiff's complaint before Judge

Roberts.   In Plaintiff's present Complaint, Plaintiff alleges that the VA's refusal to authenticate his

records constituted both a "substantial violation of due process" and a "tort."   *Id.*   Judge Boasberg

had substantially the same claim before him in *Peavey III* and appears to have cast a wide net in

dismissing this claim based on issue and claim preclusion along with Plaintiff's other claims

related to the mistreatment of his records.   *See Peavey III*, at 14, 17 (referencing broadly Plaintiff's

"allegation that different agencies concealed, altered, and destroyed government records and

impeded his ability to obtain benefits and correct his military records").  Judge Boasberg—who also had a largely incomprehensible complaint before him—did not specifically enumerate "failure to authenticate" among Plaintiff's record-related claims.

In the alternative, the Court finds it appropriate to dismiss Plaintiff's authentication claim for lack of jurisdiction and for failure to satisfy the minimal pleading requirements of Federal Rule of Civil Procedure 8(a).  To the extent Plaintiff is presenting his failure to authenticate claim as a tort claim, Plaintiff has failed to allege that he properly exhausted his administrative remedies with respect to such an FTCA claim.  *See GAF Corp. v. U.S.*, 818 F.2d 901, 904 (D.C. Cir. 1987) (explaining that the FTCA "requires that tort claimants against the United States present their claims to an appropriate federal agency as a jurisdictional prerequisite to filing suit").  To the extent that Plaintiff is alleging a due process claim, the Court finds that Plaintiff's allegations fail to provide a "short and plain" statement showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a).  The Court has thoroughly and closely reviewed Plaintiff's Complaint and cannot determine what records Plaintiff is alleging the VA refused to authenticate.  It is unclear if Plaintiff is alleging that the VA refused to authenticate records Plaintiff himself provided to the VA, *see* Compl. at 4 ("VA refused to authenticate Peavey medical abstract which contain many of Peavey USAHR"), or records that the VA provided Plaintiff in response to his FOIA request, *see id.* at 5 ("VA released various US Army Health records and early VA medical records Jan 20, 2006 but refused to authenticate its submission as official copies of the true records.").  Nor is it clear what records Plaintiff provided to the ABCMR which were rejected by the Board because they were not authenticated.  Plaintiff's Opposition does not clarify Plaintiff's Complaint; to the contrary, the Court finds that it further muddies Plaintiff's allegations.  Without clarity as to such basic allegations, neither Defendants nor the Court can begin to evaluate the nature and sufficiency of

14

Plaintiff's due process claim.  Accordingly, the Court shall dismiss without prejudice Plaintiff's due process claim arising out of the VA's alleged failure to authenticate records pursuant to Federal Rule of Civil Procedure 8(a).

The Court addresses Plaintiff's FTCA claim against Officer Kaldor, and his request for review of the 2011 ABCMR decision separately as they were not finally determined in any of Plaintiff's prior cases.

**B.      FTCA claims against Defendant Kaldor**

Officer Kaldor was not named as a defendant in *Peavey I*, but was named as a defendant in *Peavey III* where, as here, Plaintiff alleged that Officer Kaldor acted improperly in relation to Plaintiff's FOIA requests.  *See* Compl. at 2; *Peavey III*, Compl. at 3-4.  In *Peavey III*, Judge Boasberg acknowledged that Plaintiff's claims against Officer Kaldor may also be precluded like Plaintiff's claims discussed above; however, Judge Boasberg decided to address Plaintiff's claims against Officer Kaldor separately "out of an abundance of caution."  *Peavey III*, at 16.  After finding that Plaintiff had not pled that he exhausted his administrative remedies for his FTCA claim against Officer Kaldor, Judge Boasberg dismissed without prejudice Plaintiff's claim against Officer Kaldor for lack of subject matter jurisdiction.  *Id.* at 17.  In Plaintiff's present Complaint, Plaintiff has again brought an FTCA claim against Officer Kaldor for acting improperly in relation to Plaintiff's FOIA requests.  Defendants move the Court to dismiss Plaintiff's FTCA claim because Plaintiff has still failed to plead that he exhausted his administrative remedies.  The Court agrees with Defendants and, therefore, will dismiss Plaintiff's FTCA claims against Officer Kaldor.

The Westfall Act[9] makes "an FTCA action against the Government the exclusive remedy for torts committed by Government employees in the scope of their employment." *United States v. Smith*, 499 U.S. 160, 163 (1991). In order to pursue an FTCA claim, the plaintiff must exhaust his or her administrative remedies by presenting the claim to the appropriate Federal agency. The Federal Tort Claims Act "requires that tort claimants against the United States present their claims to an appropriate federal agency as a jurisdictional prerequisite to filing suit." *GAF Corp.*, 818 F.2d at 904. To exhaust his or her administrative remedies, a claimant must "present[] his claim to the appropriate federal agency and obtain[] a written notice of denial of the claim or await[] the passage of six months without a final disposition." *Horn v. U.S. Dep't of Veterans Affairs*, 941 F.Supp.2d 137, 139 (D.D.C. 2013). In the present case, that means Plaintiff must have submitted an administrative claim to the VA setting forth his allegation of wrongdoing by Officer Kaldor that Plaintiff now alleges in his Complaint.

In Plaintiff's Complaint, Plaintiff appears to allege that he exhausted his administrative remedies for his FTCA claim, either by filing a 2003 administrative claim with the VA, *see* Compl. at 4 ("Plaintiff submitted his administrative claim to VA effectively October 30, 2003 and come to US District Court seeking records April 25, 2005 . . . ."), or through his 2011 ABCMR hearing, *id.* ("[The] November 2, 201[1] ABCMR right to sue letter note[s] Morris J. Peavey have [sic] the option to seek relief in a court of appropriate jurisdiction because he has exhausted administrative

---

[9] As an initial matter, Defendants argue that the United States should be substituted for Officer Kaldor, per the Westfall Act. Defs.' Mot., at 16. The Court agrees. Where the Attorney General certifies that the federal employee was acting within the scope of her employment at the time of the incident, any civil action shall be deemed an action against the United States, and the United States shall be substituted as the party defendant. *See* 28 U.S.C. § 2679(d)(1). This certification has happened here, *see* Defs.' Ex. at E42; accordingly, the United States is substituted for Officer Kaldor.

16

remedy."). Neither of these actions establish that Plaintiff properly exhausted his administrative remedies. While the subject matter of Plaintiff's 2003 administrative claim to the VA is not at all evident from Plaintiff's Complaint or Opposition, the *2003* claim could not have exhausted Plaintiff's administrative remedies for his FTCA action against Officer Kaldor because Plaintiff alleges Officer Kaldor's tortious conduct began in *2006*. *Id.* at 2. To the extent that Plaintiff appears to be arguing that he exhausted his administrative remedies as to his FTCA claim through the ABCMR's review procedures, such an argument is entirely unavailing because the VA—not the ABCMR—is the agency where Plaintiff must exhaust his administrative remedies. Plaintiff proffers no other allegation suggesting that he submitted an administrative claim to the VA regarding his FTCA claims against Officer Kaldor.[10] Accordingly, the Court dismisses Plaintiff's FTCA claim against Officer Kaldor for lack of subject matter jurisdiction.

## C.     Review of 2011 ABCMR Decision

Finally, the Court must separately address Plaintiff's challenge to the ABCMR's 2011

---

[10] In Plaintiff's Opposition, Plaintiff makes the broad and vague assertion that "Peavey filed his administrative complaints with VA, NPRC, IRS, US Army and USDOJ informing the agencies of various civil and criminal violations by its employees." Pl.'s Opp'n, at 36. Beyond the fact that Plaintiff cannot amend his Complaint through his pleadings, this allegation is far too vague for the Court to draw the reasonable inference that Plaintiff exhausted his administrative remedies as to his specific FTCA claim against Officer Kaldor. Plaintiff also references in his Opposition a May 23, 2011, letter allegedly from Officer Kaldor which, Plaintiff alleges, "express[ed] VA position on their administrative action related to claim indicating that they did not receive this claim until that date requesting an affidavit of facts which was submitted." *Id.* at 31. It is unclear what letter Plaintiff is referencing, however, the Court notes that Plaintiff does attach to his Complaint a letter from the VA—although not from Officer Kaldor—that is dated June 3, 2011, and states that the agency did not receive Plaintiff's medical malpractice claim until May 23, 2011. Compl. at 26. The claim goes on to ask for additional information from Plaintiff in order to process his claim. *Id.* This letter also does not establish that Plaintiff has exhausted his administrative remedies as to his claim against Officer Kaldor because it relates to a different FTCA claim and does not indicate that the claim has been exhausted. *See* Pl.'s Opp'n, at 39 ("No response has been received from VA regarding their administrative status.")

decision because Plaintiff did not seek review of this decision in either *Peavey I* or *Peavey III*. In *Peavey I*, Judge Roberts reviewed Plaintiff's challenge to the ABCMR's *1968* decision denying his request for correction of his military records. Judge Roberts denied Plaintiff's challenge on the basis that Plaintiff was seeking review well outside the six-year statute of limitations for reviewing final agency actions thus depriving the Court of jurisdiction to review the ABCMR's decision. *Peavey I*, at 193 (citing 28 U.S.C. § 2401(a)). In *Peavey III*, Plaintiff once again challenged the ABCMR after submitting a renewed application to the ABCMR on November 3, 2010. However, since Plaintiff's complaint did not actually seek review of an ABCMR decision, but sought to "require the Board to *make* a decision" and the ABCMR made a decision following the filing of Plaintiff's Complaint, Judge Boasberg denied Plaintiff's ABCMR claim as moot. *Peavey III*, at 17. Judge Boasberg instructed Plaintiff that "[s]hould [he] seek judicial review of the Board's decision, he may file a separate suit under the Administrative Procedure Act." *Id.* at 18. Plaintiff's present Complaint now seeks judicial review of the ABCMR's 2011 decision denying Plaintiff's request to correct his military records.

Defendants move the Court to dismiss Plaintiff's 2011 ABCMR claim on two bases: First, they argue that 28 U.S.C. § 2401(a)'s six-year statute of limitations bars judicial review of Plaintiff's claim since Plaintiff is seeking review well over six years after the ABCMR's original decision in 1968. Defs.' Mot., at 19. Second, Defendants argue in the alternative that Plaintiff's claim is time-barred by the ABCMR's own three-year statute of limitations requiring a complainant to petition the agency within three years of injury, which, in this case, occurred in 1967. *Id.* at 22 (citing 10 U.S.C. § 1552(b)). The Court addresses each argument in turn.

### i.      28 U.S.C. § 2401(a) Six-Year Statute of Limitations

Suits, such as the present one, challenging final agency action pursuant to § 704 of the

APA, are subject to the statute of limitations set out in 28 U.S.C. § 2401(a), which provides that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The date on which the right of action first accrues is the date of the final agency action. *Chenault v. McHugh*, 968 F.Supp.2d 268, 272 (D.D.C. 2013) (citing *Harris v. FAA*, 3 F.3d 1006, 1010 (D.C. Cir. 2004)). Applications for reconsideration filed more than six years after an adverse board decision, will not reset or toll the statute of limitations. *Lewis v. Sec'y of the Navy*, 892 F.Supp.2d 1, 7 (D.D.C. 2012); *Cage v. McHugh*, 963 F.Supp.2d 29, 32 (D.D.C. 2013) (holding that plaintiff's cause of action accrued upon denial by ABCMR of request for reinstatement, not the decision on reconsideration nearly a decade later). However, "[i]n circumstances where an agency has re-opened a previously considered issue anew" upon application for reconsideration, "the reopening doctrine allows an otherwise stale challenge to proceed." *Chenault*, 968 F.Supp.2d at 272 (citing *NRDC v. EPA*, 571 F.3d 1245, 1265 (D.C. Cir. 2009)). "Only 'when the agency has clearly stated or otherwise demonstrated,' that it has reopened the proceeding will the resulting agency decision be considered a new final order subject to judicial review under the usual standards." *Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997) (citing *Morris v. Sullivan*, 897 F.2d 553, 558 (D.C. Cir. 1990)). To determine whether a case has been "re-opened" in the absence of an agency's clear statement to that effect, a court must evaluate whether the agency "in light of 'the entire context,' 'undert[ook] a serious, substantive reconsideration' " of the issue. *Chenault*, 968 F.Supp.2d at 272 (quoting *P&V Enters. v. U.S. Army Corps of Engineers*, 516 F.3d 1021, 1023–24 (D.C. Cir. 2008)). An agency may be found to have reopened the case and issued a new and final order "even though the agency merely reaffirms its original decision." *Sendra Corp.*, 111 F.3d. at 167 (citing *I.C.C. v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 278 (1987)). However, "[t]hat the agency

discusses the merits at length when it denies a request for reconsideration does not necessarily mean the agency has reopened the proceedings." *Id.* (citing *Brotherhood of Locomotive Engineers*, 482 U.S. at 280-81). A case may be considered "re-opened" when the agency undertakes a "substantive reconsideration" of the merits and renders a decision on the merits. *Chenault*, 968 F.Supp.2d at 272 (quoting *P&V Enters.*, 516 F.3d at 1023-24); *see also Fulbright v. McHugh*, 67 F.Supp.3d 81, 92 (D.D.C. 2014). Moreover, "if an agency denies a petition for reconsideration alleging 'new evidence' or 'changed circumstances,' the agency's denial is reviewable as a final agency action." *Sendra Corp.*, 111 F.3d at 166; *see also Lind v. McHugh*, No. 10-2207, 2014 WL 8807401, at *7 (D.D.C. Aug. 7, 2014).

Here, it is undisputed that Plaintiff filed an application for correction of his records with the ABCMR in 1968 and that the ABCMR denied Plaintiff's application on the merits that year. What is disputed is whether the *2011* ABCMR decision was only a reconsideration of the 1968 decision, or whether the decision was a re-opening of Plaintiff's case, marking a new, final agency action that may be judicially reviewed. Defendants contend that the 1968 decision is the relevant final agency action for purposes of the six-year statute of limitations because the ABCMR's 2011 decision was only an untimely reconsideration of the ABCMR's 1968 decision and thus did not reset the statute of limitations. Plaintiff, on the other hand, contends that the 2011 ABCMR decision was a new final agency action that reset the statute of limitations, and that his challenge to that decision, filed with this Court in 2012, fell well within the six-year statute of limitations.

The Court concludes that the ABCMR's 2011 review of Plaintiff's application constituted a re-opening of Plaintiff's case, and its decision, a new and final agency action. The ABCMR's 2011 decision states neither that it is a "reconsideration" nor that it is a "re-opening," however, the language of the decision and the context in which it was issued demonstrates that it was a re-

opening.   First, the ABCMR itself states in its decision that it is "has elected to conduct a *substantive review* of this case."   Defs.' Ex. at E23 (emphasis added).   The decision in no way references its prior 1968 decision or any of Plaintiff's prior applications, much less relies on its analysis from any of its prior decisions.   Instead, the decision is written as if all of the claims and evidence presented by Plaintiff were before the Board for the first time.   Even though Defendants in their briefing now characterize the 2011 decision as a reconsideration, the Court finds the language of the ABCMR's 2011 decision to be in distinct contrast with the language used in the decisions which other courts have found to be simple reconsiderations of prior determinations. *See, e.g., Chenault*, 968 F.Supp.2d at 274-75 (even though ABCMR rendered a decision on the merits, decision found to be a reconsideration where it "unambiguously referred to the [prior] ABCMR opinion" throughout, and made a "mere cursory examination of the previous record").

Moreover, in evaluating Plaintiff's 2010 application, the ABCMR invoked its three-year statute of limitations which requires a complainant to file a request for corrections with the Board within three years of the discovery of the error. *See* 10 U.S.C. § 1552(b).   The ABCMR explained that "it appear[ed]" that Plaintiff did not file within the three-year statute of limitations, but stated that it would waive the statute of limitations if a review of the merits demonstrated that doing so would be in the interest of justice. Defs.' Ex. at E23.   If the ABCMR were treating Plaintiff's 2010 application as simply a reconsideration and not a reopening of the Board's 1968 decision with a new decision, it would be illogical for the ABCMR to invoke its three-year statute of limitations as it is undisputed that Plaintiff filed with the Board his 1968 request for corrections within three years of the 1967 alleged error.   To make sense of the ABCMR's language, the Court must view the ABCMR's 2011 decision as treating Plaintiff's 2010 application as a new application for corrections.   Such an interpretation is supported by the letters Plaintiff attached to his Complaint

which the Plaintiff received from the ABCMR in response to his October 2011 and December 2011 requests for reconsideration.  Compl. at 20. The ABCMR treated Plaintiff's requests as requests for reconsideration of the ABCMR's 2011 decision and explained to Plaintiff that he could request reconsideration of "an earlier ABCMR decision" only if the request is received within one year of "the original decision" and it has not already been reconsidered.  *Id.* In both letters, the ABCMR treated their 2011 decision as the "original decision"—not a reconsideration. *See id.*

Finally, the ABCMR conducted a thorough review of the merits of this case.  This review included eleven pages of background into Plaintiff's military record and four pages of discussion about whether Plaintiff was entitled to the relief he sought.  Accordingly, the Court finds that the ABCMR undertook the "serious, substantive reconsideration" that would warrant treating its decision as a reopening.  *Chenault*, 968 F.Supp.2d at 272.  Additionally, Plaintiff's 2010 application raised claims that were absent from his 1968 application; specifically, Plaintiff's 2010 application requested removal of a court-martial and other disciplinary actions, removal of a Certificate of Unsuitability for Enlistment/Reenlistment, restoration of his rank, and a medical discharge, while his 1968 application requested only removal of the court-martial and disciplinary actions.  *Compare* Compl. at 21 (Nov. 3, 2011, ABCRM Application), *with* Defs.' Ex. at E1 (May 9, 1968 ABCMR Application). While courts should be wary of plaintiffs creatively "framing the relief sought" in an effort to evade the statute of limitations, *Chenault*, 968 F.Supp.2d at 274, when genuinely new issues are brought before the ABCMR, courts have treated the decision resulting from those applications as reviewable final agency actions.  *See, e.g.*, *Fulbright v. McHugh*, 67 F.Supp.3d 81, 87 (D.D.C. 2014) (finding 2008 application to be a new final agency action where applicant petitioned the ABCMR for medical disability retirement in 1992 and was denied and re-

applied in 2008 for the same relief and added a claim that he should have been promoted to major).

For all of these reasons, the Court finds it appropriate to treat the ABCMR's 2011 decision as a

final agency action that restarted the six-year statute of limitations.  *See id.* at 87, 92 (reviewing

ABCMR decision where language of decision did not suggest it was a reconsideration, ABCMR

elected to conduct a substantive review of the merits of the case and waive the three-year statute

of limitations if in the interest of justice, and ABCMR addressed a new claim).   Accordingly,

Plaintiff's request for judicial review pursuant to 28 U.S.C. § 2401(a) is not barred by the six-year

statute of limitations.

### A.  ABCMR Statute of Limitations: 10 U.S.C. § 1552(b)

In the alternative, Defendants argue that Plaintiff's claim is barred by the ABCMR's own

three-year statute of limitations.  Pursuant to 10 U.S.C. § 1552(b)

> [n]o correction may be made under subsection (a)(1) unless the claimant or his heir
> or legal representative files a request for the correction within three years after he
> discovers the error or injustice. However, a board established under subsection
> (a)(1) may excuse a failure to file within three years after discovery if it finds it to
> be in the interest of justice.

It is undisputed that the errors Plaintiff seeks to correct were discovered in the 1960s.  In the

ABCMR's 2011 decision, the Board noted that

> [w]hile it appears the applicant did not file within the time frame provided in the
> statute of limitations, the ABCMR has elected to conduct a substantive review of
> this case and, *only to the extent relief, if any, is granted,* has determined it is in the
> interest of justice to excuse the applicant's failure to timely file.

Defs.' Ex. at E23 (emphasis added).  As the ABCMR ultimately declined to grant Plaintiff relief,

the ABCMR found it was not in the interest of justice to waive its three-year statute of limitations.

The Court has the jurisdiction to review the ABCMR's decision to not waive its three-year

statute of limitations.  *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1400-04 (D.C. Cir. 1995).   The

Court reviews the Board's decision not to waive its statute of limitations to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Dickson*, 68 F.3d at 1404 (quoting 5 U.S.C. § 706(2)(A)). Such an ABCMR decision may be arbitrary and capricious when it does not explain its decision. *See id.* ("When an agency merely parrots the language of a statute without providing an account of how it reached its results, it has not adequately explained the basis for its decision."). The Board decision may also be arbitrary and capricious when it is "based on wholly erroneous facts." *Wielkoszewski v. Harvey*, 398 F. Supp. 2d 102, 114 (D.D.C. 2005).

The Court finds that the ABCMR's decision not to waive the three-year statute of limitations on Plaintiff's claims was neither arbitrary nor capricious. The ABCMR did not simply make a conclusory determination that it was not in the interest of justice to waive the statute of limitations, but reviewed the record it was presented and considered the merits of Plaintiff's application. *See Allen v. Card*, 799 F. Supp. 158, 164-65 (D.D.C. 1992) (finding that the "'apparently sensible approach' outlined in the case law is the appropriate one: the BCMR in assessing whether the interest of justice supports a waiver of the statute of limitations should analyze both the reasons for the delay and the potential merits of the claim based on a cursory review").

Moreover, the Court has reviewed the ABCMR's decision and Plaintiff's challenges to the decision and finds that the decision is not "based on wholly erroneous facts" or otherwise plagued by error. In his Opposition, Plaintiff argues that it was improper for the ABCMR to decide against granting him a medical discharge when the Board did not have all of Plaintiff's medical records related to his accident before it. Pl.'s Opp'n, at 28. This argument, however, ignores the nature of the Board's mandate. The ABCMR "decide[s] cases on the evidence of record. It is not an

24

investigative body." Army Board for Correction of Military Records Functions, Army Reg. 15-185 ¶ 2-2.  In this case, the ABCMR nevertheless conducted an "exhaustive search" for Plaintiff's military records with the U.S. Army records custodian, but did not locate Plaintiff's records.  *See* Compl. at 10, 53.  Plaintiff was then informed that, for the Board to render a decision, he would need to provide the necessary military records.  *Id.* at 5.  Plaintiff appears to allege that he attempted to provide his records to the ABCMR, but because the records he provided were not authenticated, the ABCMR refused the records.   *Id.* at 5, 11 ("Peavey submitted the records without authentication and ABCMR consider them worthless."), 23 ("ABCMR refused to accept any records submitted by Peavey."), 32.  In its decision, the ABCMR acknowledges that Plaintiff provided several documents, including a "[c]opy of his service record," Defs.' Ex. at E23, and references several medical records throughout its decision, *see id.* at E25, E36.  However, the ABCMR states that "the medical documents related to his accident are not available for review with this case."  *Id.* at E36.  Given that the ABCMR is not an investigative body and that Plaintiff himself alleged that the records he provided to the ABCMR were not accepted because they were unauthenticated, Plaintiff cannot now fault the ABCMR for rendering a decision without Plaintiff's medical records related to his accident.  The ABCMR evaluated Plaintiff's claims on the record that was properly before it.  Accordingly, the Court finds that Plaintiff has failed to allege that the ABCMR's refusal to waive the three-year statute of limitations was arbitrary and capricious.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss.  All of Plaintiff's claims are DISMISSED WITH PREJUDICE except Plaintiff's tort and due process claims relating to the Department of Veterans Affairs' alleged failure to authenticate Plaintiff's

records, and Plaintiff's FTCA claim against Officer Kaldor which are DISMISSED WITHOUT PREJUDICE.  An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____

**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE